# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

MICHAEL S. GAFFNEY, Independent          CIVIL ACTION
Executor for the Succession of
Mary Catherine Regan          16-802-SDD-RLB

VERSUS

JPMORGAN CHASE BANK, N.A.

## RULING

This matter is before the Court on the *Motion for Summary Judgment,*[1] filed by

Defendant JPMorgan Chase Bank, N.A. ("Defendant").     Plaintiff, Michael S. Gaffney,

Independent Executor for the Succession of Mary Catherine Regan ("Plaintiff"), has filed

an *Opposition*[2] to this motion to which Defendant filed a *Reply.*[3]  For the reasons which

follow, Defendant's motion shall be GRANTED.

## I.   BACKGROUND

Following the February 10, 2015 death of Mary Catherine Regan ("Regan"), a

Succession was filed in state court, and Plaintiff was appointed as the Independent

Executor for the Succession.  A review of the decedent's property led to the discovery of

an alleged "Cashier's Check" made out to Mary Catherine Regan on April 18, 1960, in the

amount of $1 million, that was issued by The National Bank of Commerce.[4]  This check

---

[1] Rec. Doc. No. 16.
[2] Rec. Doc. No. 17.
[3] Rec. Doc. No. 31.
[4] Bank One, N.A. ("Bank One") acquired the assets and assumed the liabilities of The National Bank of Commerce in November 1998; Defendant acquired Bank One through a merger in November 2013.  *See*
47109

was included as an asset of the Succession.  Plaintiff presented the check to Defendant on March 11, 2016 for payment; however, after weeks of investigation, the Defendant refused the check and maintains that the check is invalid.  Defendant also moves for summary judgment on the grounds that the check has prescribed.

The check appears below:

At the time of Regan's death, she had lived with her roommate, Marilyn Wenzel ("Wentzel"), for over fifty years.  Plaintiff contends Regan retired from Bell South Telephone Company after 47 years of employment.  Wentzel's deposition testimony reflects that she and Regan had knowledge of each other's finances, bought several properties together, and discussed their wills and final wishes with each other.  Wentzel testified that Regan "told me what she wanted" for the distribution of her estate.[5]

Wentzel discovered the check at issue after Regan's death and testified that she did not know of the check before its discovery, and Regan had never mentioned the check

while she was alive.[6]  Wentzel discovered the check when she was going through Regan's clothing and sorting her files.[7]  The check was discovered in an unlabeled file in a filing cabinet.[8]  Wentzel brought the check to her financial advisor who advised her to take the check to the bank.[9]

Defendant contends Plaintiff has no explanation of the source or circumstances of the "check," its issuance, the conflicting payable amounts, or that it is signed in the name of a fictional character on a popular 1950s television show called "The Millionaire." Defendant argues that the check appears to be a counter check upon which someone typed "Cashier's Check," and points out that the embossed "ribbon writer" value of $100,000 on the check conflicts with the typed amount of $1,000,000.  Defendant's expert Robert G. Foley opines that the check appears to be "a vintage 1960s era check issued by [Defendant's predecessor bank] that was modified by unknown parties for spurious purposes or as a gag, prop, or souvenir."[10]  Moreover, Defendant maintains that Plaintiff cannot establish that he is a "holder in due course," and any claims on this check have long ago prescribed under applicable Louisiana law.

In opposition to this motion, Plaintiff primarily attacks the credibility and expertise of Defendant's experts.  However, the expert opinions put forth by Defendant's experts are largely uncontroverted.[11]  Plaintiff maintains that Defendant's experts rely on facts not

---

[6] *Id.* at 7 (Deposition of Wentzel, pp. 22-23).
[7] *Id.*
[8] *Id.* (Deposition of Wentzel, pp. 23-24).
[9] *Id.* at 7-8 (Deposition of Wentzel, pp. 24-25).
[10] Rec.Doc. No. 16-3 at 7.
[11] Plaintiff attached to his *Opposition* expert reports for ostensible expert witnesses who were never identified or disclosed to Defendant prior to the filing of Plaintiff's *Opposition* brief.  Defendant moved to strike these witnesses and their reports, and the Court granted this relief in its *Ruling* at Rec. Doc. No. 35. Accordingly, any arguments by Plaintiff that is based on proposed experts and purported expert reports that have been stricken in accordance with the Court's *Ruling* are not considered by the Court and do not
47109

in evidence and unsubstantiated speculation in reaching their determinations that the check at issue is not authentic. Plaintiff takes issue with defense experts' conclusion that 1950s television personality John B Tipton signed the check. Rather, Plaintiff contends the signature is illegible, and under Louisiana law, the person who signed a cashier's check is presumed to be authorized by the Bank. Thus, Plaintiff argues Defendant has not overcome this presumption and shifted the burden onto Plaintiff to prove that Regan was the holder in due course. Plaintiff also maintains that the check is not governed by the law as of 1960, and it has not prescribed.

The Court will turn its focus to the issue of prescription which should be decided before reaching the merits of the other claims.

## II.     LAW AND ANALYSIS

### A.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'" However, the

constitute summary judgment evidence demonstrating material factual disputes that would preclude summary judgment.
47109

non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" All reasonable factual inferences are drawn in favor of the nonmoving party. However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"

## B.      Prescription of a Check and/or Cashier's Check

Defendant contends the current law governing prescription of claims on a cashier's check is inapplicable here because the check was allegedly issued in 1960, fourteen years prior to Louisiana's adoption of the Uniform Commercial Code in 1974. Defendant cites La. C.C. art. 3498 (formerly art. 3540),which provides the general prescriptive period for actions on negotiable instruments:

> Actions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years. This prescription commences to run from the day payment is exigible.

Defendant also points to La. R.S. 10:3-118, which offers more specific prescriptive periods for specific types of negotiable instruments, and provides, in pertinent part:

47109

(d) An action to enforce the obligation of the acceptor of a … cashier's check … must be commenced within three years after demand for payment is made to the acceptor or issuer, as the case may be.

Defendant acknowledges that La. R.S. 10:3-118 appears to provide no limit on the amount of time a customer may hold a cashier's check before making demand for payment.

Defendant notes that, in 1960 when this check was allegedly issued, the general prescriptive period for a cause of action on a negotiable instrument was governed entirely by the Louisiana Civil Code, which was five years. The law was silent as to when a cause of action on a negotiable instrument accrued; thus, the only available guidance in the pre-1960 law was the language in Article 3498 which states prescription begins to run "from the day payment is exigible."

Defendant cites several pre-1960 Louisiana cases which hold that prescription on an instrument payable on demand began to run from the date of the execution of the instrument rather than the date of the demand.[12] Further, Defendant contends that, under the law in 1960, an instrument was payable on demand when "no time for payment is expressed."[13] Because the check at issue herein has no date certain for payment, Defendant contends it is an instrument payment on demand.[14] Defendant acknowledges that there is no Louisiana jurisprudence addressing the prescriptive period for a cashier's check under pre-UCC law; however, Defendant discusses cases from other states holding that state law applied rather than the UCC where a cashier's check was issued

---

[12] Rec. Doc. No. 16-8 at 17 (citing *Darby v. Darby*, 130 La. 847, 45 So. 747 (1908); *Zimmer v. Caumont*, 187 So. 681 (La. App. Orleans 1939); *Heard v. Heard*, 149 So. 156 (La. App. 2d Cir. 1933); *Cassou v. Robbert*, 166 La. 101, 116 So. 714 (1928)).

[13] *Id.* (quoting *SFC Acceptance Corp. v. Spain*, 251 La. 902, 207 So.2d 364 (1968)).

[14] *Id.* (citing *Nielsen v. Planters Trust & Sav. Bank of Opelousas*, 183 La. 645, 164 So. 613 (La. 1935).

47109

before the enactment of the UCC.[15]

Based on the Louisiana Supreme Court's holding that a cashier's check was a negotiable instrument payable on demand, and considering the jurisprudence from other states on this issue, Defendant argues the prescriptive period for a cashier's check in 1960 was five years; therefore, under 1960 Louisiana law, any claims on the check at issue have prescribed.

Defendant further argues that the adoption of the UCC and its new prescriptive periods in 1974 did not revive the prescribed claim on the 1960 check.  Generally, prescriptive periods are treated as procedural laws and are applied retroactively as held by the Louisiana Supreme Court.[16]  However, Defendant argues, the revival of an already prescribed claim is a different issue.  Defendant points out the Louisiana Supreme Court's holding that, once a prescriptive period has elapsed, the legislature grants to a defendant the substantive right to plead the defense of prescription.  Thus, in order for a new prescriptive period to revive a previously prescribed claim, because it involves a substantive right, a "clear and unequivocal expression of intent by the legislature" is necessary.[17]  Because La. R.S. 10:3-118 contains no language expressing a legislative intent that this new prescriptive period for a cashier's check should apply retroactively, the prescribed claims on this check have not been revived by Louisiana's enactment of the UCC in 1974.

Plaintiff contends that the cashier's check is not governed by the law of 1960 and is not prescribed because cashier's checks are to be treated like cash, and "cash does

---

[15] *Id.* (citations omitted).
[16] *Lott v. Haley*, 370 So.2d 521, 523 (La. 1979).
[17] *Chance v. American Honda Motor Co., Inc.*, 93-2582 (La. 4/11/94), 635 So.2d 177, 178.
47109

not prescribe."[18]  Plaintiff claims Defendant's attempt to treat this check as a negotiable instrument twists the law because, as a cashier's check, it cannot be payable on demand because it is a cashier's check and not a note.  Plaintiff argues that the cases upon which Defendant relies are irrelevant because one case involves a promissory note rather than a cashier's check, and another case did not address the issue of prescription.

Defendant responds to Plaintiff's arguments by pointing out that, in 1960, a cashier's check was classified as a "bill of exchange" under both Louisiana and federal law.  In *State v. Frank*, the Louisiana Supreme Court noted:

> "The cashier's check is simply a bill of exchange or draft drawn by a bank upon itself," Brady on Bank Checks, s 1.6 (4th ed.); 10 Am.Jur.2d Banks, s 544, and the drawee on a bill of exchange or draft is not called upon to part with the funds unconditionally promised until such draft is presented for payment.[19]

The United States Court of Appeals for the Fifth Circuit also held in 1960 that "[i]t is clear [a] Cashier's check was a bill of exchange."[20]  Further, pursuant to then-La. C.C. art. 3540, the prescriptive period that applied in 1960 to instruments due on demand, like a cashier's check, was five years.[21]

Defendant cites the Louisiana Supreme Court's decision in *Harman v. Claiborne* from 1846.[22]  Defendant contends *Harman* is relevant to this case because it addressed whether prescription had run on a plaintiff who never presented a check for payment.

---

[18] Rec. Doc. No. 17 at 14.

[19] 355 So.2d 912, 917 n. 7 (La. 1978).

[20] *Harrison v. U.S.,* 279 F.2d 19, 23 (citing *Hoss v. United States*, 8 Cir., 232 F. 328).

[21] In 1960, the Louisiana Civil Code provided:  "Actions on bills of exchange … those on all effects negotiable or transferrable by indorsement or delivery, and those on all promissory notes, whether negotiable or otherwise, are prescribed by five years, reckoning from the day when the engagements were payable."  *Lindsley v. Copping*, 215 So.2d 543, 545 (La. Ct. App. 1st 1968)(quoting former La. C.C. art. 3540).

[22] 1 La. Ann. 342 (La. 1846).

47109

Particularly relevant to the case at bar, *Harman* involved "teller's check," which is defined by La. R.S. 10:3-104(h) as a check issued by a bank and drawn on the bank's own account at another institution. Defendant maintains that, pursuant to La. R.S. 10:3-118(d), teller's checks are functionally equivalent to cashier's checks and are treated identically for prescription purposes.

The *Harman* Court recognized that teller's checks, like cashier's checks, "are frequently used as currency."[23] Nevertheless, the Court held that prescription began to run when the check was issued, holding:

> Checks of this kind are used for purposes of immediate circulation; but the law is well settled that they must be presented for payment within a reasonable time. It cannot be required that bankers should keep their accounts open, at the caprice of the holders of checks or bills, beyond a period which the usual course of business exacts from them.[24]

Based on the foregoing, Defendant maintains that any claim on the check at issue prescribed in 1965 and was not revived by the later-adopted UCC provisions. The Court agrees.

Assuming *arguendo* that the check at issue is an authentic cashier's check, assertions of which the Court is extremely doubtful based on Defendant's uncontroverted expert testimony, a five year prescriptive period applied in 1960, and the "cashier's check" prescribed in 1965. While Plaintiff relies generally on the retroactivity of amendments to prescriptive periods, Plaintiff offers no authority or law to refute the fact that this was a prescribed claim at the time of Louisiana's enactment of the UCC. The Louisiana Supreme Court has made clear that a statute enacted after claims have prescribed does

---

[23] *Id.* at 343.
[24] *Id.*
47109

not apply retroactively to revive the claims.

The Louisiana Supreme Court addressed the issue of revival of prescribed claims by the legislature in *Chance v. American Honda Motor Co., Inc.*[25]  Explaining the issue, the Court stated:

> Although prescriptive statutes are generally procedural in nature, the revival of an already prescribed claim presents additional concerns. For while the defendant does not acquire anything during the running of the prescriptive period, once the time period has elapsed, the legislature grants the defendant the right to plead the exception of prescription in order to defeat the plaintiff's claim. La.Code Civ.P. arts. 927 & 934. Because the defendant acquires the right to plead the exception of prescription, a change in that right constitutes a substantive change in the law as applied to the defendant. *See St. Paul Fire & Marine Ins. Co. v. Smith*, 609 So.2d 809, 817 (La.1992) ("Substantive laws either establish new rules, rights, and duties or change existing ones."); *Thomassie v. Savoie*, 581 So.2d 1031, 1034 (La.App. 1st Cir.1991) ("[I]f a statute which is remedial or procedural also has the effect of making a change in the substantive law, it must be construed to operate prospectively only."). Thus, were we to interpret the amendment at issue to allow the revival of prescribed causes of action, the substantive rights of the defendant would be materially changed because he would be stripped of this acquired defense. Guided by the principles established in [La.Civ.Code] article 6[1], we require, at the very least, a clear and unequivocal expression of intent by the legislature for such an "extreme exercise of legislative power."[26]

Plaintiff has failed to provide the Court with any intervening authority that would hold or suggest that the cases relied upon by the Defendant, although in some cases very old, have been overruled or are no longer relevant to the analysis of prescription in this case.  Accordingly, Plaintiff has failed to carry his burden of demonstrating material issues of fact regarding the prescription of this alleged cashier's check, and summary judgment

---

[25] 93–2582 (La.4/11/94), 635 So.2d 177.
[26] *Id.* at 178 (footnote omitted)(alteration original).

47109

in favor of Defendant is proper because any claim relating to this check prescribed in 1965.

## III.    CONCLUSION

For the foregoing reasons, the *Motion for Summary Judgment*[27] filed by Defendant is GRANTED.  Plaintiff's claims are dismissed with prejudice.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on July 31, 2018.


_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[27] Rec. Doc. No. 16.

47109